

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Paul Grogan
County Attorney
Montgomery County
Conroe, Texas

Dear Sir:

Opinion No. O-7402

Re: Authority of the Democratic
Executive Committee to make
certain disbursements of
funds collected from the var-
ious candidates for election
expenses under the facts sub-
mitted.

Your letter of recent date requesting an opinion from this department on the above subject matter is as follows:

"As provided by Art. 3108 R.S. 1925, the Democratic Executive Committee of Montgomery County made assessments against each candidate for County and precinct offices to provide a fund to pay the expenses of holding the July and August primary elections in said County for the year 1946. In determining the amount necessary to be raised for said purpose, following a long established custom in Montgomery County of paying the County Chairman and the members of the Executive Committee for time and expenses in attending meetings of the Committee and in performing other duties required of them, the Committee took into consideration such payments as part of the expenses of holding the primary elections in making assessments against the candidates. The assessments so made by the Committee were paid and the fund deposited in the bank to the credit of the 'Montgomery County Democratic Executive Committee, - R. A. Powell, Chairman'.

"At the final meeting of said Executive Committee on August 29th, 1946, and after all other bills for expenses of holding the two primaries

Hon. Paul Grogan - Page 2

had been considered and ordered paid by the Committee, and, after the Committee had been advised by the County Chairman that, in his opinion, the Committee did not have authority to pay or authorize the payment of the items mentioned below, the Committee by resolution duly made and passed, approved and directed the payment of such items as necessary expenses incurred in holding such primary elections the following:

"1st. $10 per day to be paid to each member of the Committee for each day such member attended the meetings of the Committee.

"2nd. $10 per day for four days to be paid each member of a sub-committee for his services in performing the duties of a 'primary committee' and in assembling and arranging the ballot boxes and other supplies for delivery to the presiding officers of the several election precincts.

"3rd. $100 to be paid to the Secretary of the Committee for services rendered by him as such, including incidental expenses incurred by him for postage, etc.

"4th. $500 to be paid to the County Chairman as compensation for his services in connection with the holding of such primary elections.

"5th. The Committee also provided by resolution that there should be retained by the Committee as a 'reserve' the sum of $400, and, that the remainder of said fund shall be refunded to the candidates contributing to same, proportionately.

"In order that the County Chairman may properly discharge his duties and not infringe upon the duties and functions of the Executive Committee, please advise me as to the above, and also on the following questions:

"1st. Having assessed the candidates for the purposes above mentioned as well as the other

expenses of holding the primary elections, does the Committee have the authority to provide by resolution for the disbursement of such funds for such purposes?

"2nd. The Committee having by resolution approved the payment of the 'expenses' above set out, is it the duty of the County Chairman to issue warrants against such fund in payment of such approved 'expenses'?

"3rd. Does the Committee have authority to create a reserve fund and retain part of the unexpended balance in such reserve fund?

"4th. Is it necessary for the Committee to take some affirmative action directing the making of a refund to candidates, before the County Chairman will be authorized to make a refund of the unexpended balance to the contributing candidates?

"Your attention is called to the authorities and statutes bearing upon questions submitted. - Kaufman vs. Parker, 99 S. W. 2nd, 1074; Small vs. Parker, 119 S. W. 2nd, 609, R. S. Art. 3108 and 3022-A."

For the purpose of this opinion we shall divide your questions into two groups. We shall refer to your first five questions as Group A and your second four questions as Group B.

Questions Nos. 1, 2, 3 and 4 of Group A are answered in the negative by our Opinions Nos. O-2688 and O-7282. In Opinion No. O-7282 we held that the County Executive Committee was not authorized to assess the various candidates as an expense of the primary a fee for the members of said committee. We quote the following from said opinion:

"Article 3108, V.A.C.S., provides:

"'At the meeting of the county executive committee provided in Article 3117, the county committee shall also carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary; providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks and messengers, to report the result in each precinct to the county chairman, as provided for herein, and all

Hon. Paul Grogan - Page 4

other necessary expenses of holding such primaries in such counties and shall apportion such cost among the various candidates for nomination for county and precinct offices only as herein defined, and offices to be filled by the voters of such county or precinct only (candidates for State offices excepted), in such manner as in their judgment is just and equitable, giving due consideration to the importance and emoluments of each such office for which a nomination is to be made and shall, by resolution, direct the chairman to immediately mail to each person whose name has been requested to be placed on the official ballot a statement of the amount of such expenses so apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the fourth Monday in June thereof.' (Underscoring ours)

"Article 3117, V.A.C.S., is as follows:

"'The various county committees of any political party, on the third Monday in June preceding each general primary, shall meet at the county seat and determine by lot the order in which the names of all candidates for all offices requested to be printed on the official ballot shall be printed thereon.'

"Article 3118, V.A.C.S., reads as follows:

"'There shall be for each political party required by this law to hold primary elections for nomination of its candidates, a county executive committee, to be composed of a county chairman, and one member from each election precinct in such county; the committeemen from such election precinct shall be chairman of his election precinct, and the said county chairman shall be elected on the general primary election day; the county chairman by the qualified voters of the whole county, and the precinct chairman by the qualified voters of their respective election precincts. Said county and precinct chairman shall assume the duties of their respective offices on Saturday following the runoff primary immediately after the committee has declared the results of the run-off primary election. Said county chairman shall

Hon. Paul Crogan-Page 5

be ex-officio a member of the executive committee of all districts of which his county is a part, and the district committee thus formed shall elect its own chairman. Any vacancy in the office of chairman, county or precinct, or any member of such committee shall be filled by a majority vote of said executive committee. The list of election precinct chairmen and the county chairmen so elected, shall be certified by the county convention to the county clerk, along with the other nominees of said party. If there are no requests filed for candidates for county and precinct chairman, a blank space shall be left on the ticket beneath the designation of such position.'

"In the case of Kauffman v. Parker, 99 S.W. (2d) 1074, the court had before it a similar question to the one presented in your request. We quote the following language from said case:

"'The money when collected and placed in the hands of the appellants (the committee) became a trust fund, and could only be disbursed and paid out as provided by statute; certainly it could not be spent by the chairman of the executive committee, these appellants, (the committee) for salaries and services performed by the chairman, nor could it be spent for unnecessary expenses, but must be spent for the purposes intended by the statute and under the provisions of the statutes authorizing such expenditures.' (Parenthesis ours)

"Money collected under the provisions of Article 3108 to defray the expenses of the primary cannot be spent for items not within the purview of said Article. See: Small v. Parker, 119 S.W. (2d) 609.

"We are unable to find any provisions in the statute allowing the members of the county executive committee any fees for attending a meeting of said committee. Your question should, therefore, be answered in the negative and it is so answered."

In answer to your fifth question in Group A and your third question in Group B, we call your attention to the following language in Kaufman vs. Parker, 99 S.W. (2d) 1094, 1076:

"If there is a surplus of money on hand and with the chairman after all the expenses of the campaign, the first and second primaries, are paid in August,

it rightfully belongs to the donors, those who in-
trusted it to the chairman, and it should be returned
to those who put it up in proportion to what they each
contributed. This was recognized by the appellants
when they refunded or paid back 20 per cent of the
funds they had on hand after the second primary. It is
without authority of law to spend it for back rents for
former years time, and for salary to the chairman and/
or for any purpose not provided for in the statutes.
The period of the two primaries does not last but about
three months, and the chairman first having collected
the assessments from the candidates - has the money in
his possession - can easily pay all necessary expenses
for the full period of the time it requires to hold both
primaries, and there is very little expense until another
two years comes around, and then a different set of can-
didates may be in the various races, and they will be
assessed under the statute for such race. The statute
does not contemplate holding over funds from one admin-
istration of two years to another two years hence. Nor
does the statute provide for the payment of rents for
twenty-four months time, nor for a stenographer, office
help, for a period of twenty-four months time - only a
portion of same can be designated as actual, necessary,
and chargeable to those who gave it under the primary
laws."

In view of the foregoing decision, it is the opinion of
this department that the Democratic Executive Committee does not
have the authority to create a reserve fund but must refund all of
the unexpended balance of the monies now on hand after the necessary
expenses have been paid.

In view of the foregoing, it is unnecessary to answer
questions one and two of Group B.

In answer to your fourth question of Group B, it is the
opinion of this department that the Committee should direct the
Chairman to pay to the various candidates a proportionate part of
the unexpended balance of the funds on hand since the Committee is
the trustee of the monies paid in by the various candidates.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *J. C. Davis, Jr.*
J. C. Davis, Jr.
Assistant

By *John Reeves*
John Reeves

APPROVED SEP 23, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

JR:djm

Enclosures

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN